UNITED STATED DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ENPAT, INC.,

              Plaintiff,

      v.

GENERAL ELECTRIC COMPANY,

              Defendant.

Case No. 6:08-cv-01895-ORL-31KRS

**GENERAL ELECTRIC COMPANY'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT THAT CLAIMS 1 AND 12 ARE INVALID UNDER 35 U.S.C. § 112(2), AND REQUEST FOR ORAL ARGUMENT**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

STATEMENT OF UNDISPUTED FACTS ........................................................................ 3

I.     ASSERTED CLAIMS .................................................................................... 3

II.    THE '961 APPLICATION ............................................................................ 4

       A.    The Original Claims As Filed ............................................................ 4

       B.    Claim Rejections ................................................................................ 5

       C.    Claim Amendment ............................................................................. 5

       D.    Prosecution Argument ....................................................................... 6

III.   THE '726 PATENT SPECIFICATION............................................................ 7

       A.    The Controller (Inverter)................................................................... 7

       B.    DC Reference Source 40................................................................... 8

       C.    Sinusoidal Reference (Sine Wave Generator 184) .......................... 9

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 10

I.     INTRODUCTION ........................................................................................ 10

II.    APPLICABLE LAW .................................................................................... 10

       A.    Section 112(2) Claiming Requirements........................................... 11

       B.    Section 112(2) Applies To Means-Claiming Under Section 112(6) .............. 12

       C.    Test For Corresponding Structure.................................................... 13

III.   CLAIMS 1 AND 12 FAIL THE SECTION 112(2)
        CLAIMING REQUIREMENTS AND ARE INVALID ......................... 13

       A.    Construing The "Signal Providing Means" Function ..................... 14

       B.    The '726 Patent Fails To Disclose And Clearly Associate
           Corresponding Structure For The Signal Providing Means........................... 15

1. No Structure To "Arbitrarily Select" A Signal Or Current Waveform .............................................. 15

2. Disclosed Structure Is Incapable Of Providing Any "Arbitrarily Selected" Waveform .............................. 19

 a) Fixed Signal Sources Cannot Be Corresponding Structure .... 19

 b) Disclaimed Embodiments Cannot Be Corresponding Structure ...................................... 20

 c) A Phase Locked Loop Is Not Corresponding Structure .......... 21

C. The Asserted Claims Are Invalid .................................................................... 22

IV. DETAILED CLAIM CONSTRUCTION FOR THE SIGNAL PROVIDING MEANS FUNCTION ........................................ 22

A. Plain Meaning Confirms The Function ............................................................ 22

B. Prosecution Disclaimer Confirms The Function ............................................. 23

C. The Specification Confirms The Function ...................................................... 25

V. CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................. 11

*Aristocrat Techs. Aus. Pty Ltd. v. Intern. Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008) ................................................................ 16

*Biomedino, LLC v. Waters Techs. Corp.*,
   490 F.3d 946 (Fed. Cir. 2007) ........................................................... passim

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
   296 F.3d 1106 (Fed. Cir. 2002) ......................................................... passim

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
   145 F.3d 1303 (Fed. Cir. 1998) ................................................................ 14

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
   412 F.3d 1291 (Fed. Cir. 2005) ......................................................... passim

*Ekchian v. Home Depot, Inc.*,
   104 F.3d 1299 (Fed. Cir. 1997) ................................................................ 24

*General Electric Co. v. Wabash Appliance Corp.*,
   304 U.S. 364 (1938) ............................................................................ 11, 16

*In re Donaldson Co., Inc.*,
   16 F.3d 1189 (Fed. Cir. 1994) (*en banc*) .............................................. 12, 22

*In re Prater*,
   415 F.2d 1393 (C.C.P.A. 1969) ............................................................... 18

*Med. Instr. & Diag. Corp. v. Elekta AB*,
   344 F.3d 1205 (Fed. Cir. 2003) ............................................................. 10, 12

*Net MoneyIN, Inc. v. Verisign, Inc.*,
   545 F.3d 1359 (Fed. Cir. 2008) ................................................................ 11

*Omega Eng'g, Inc. v. Raytek Corp*,
   334 F.3d 1314 (Fed. Cir. 2003) ......................................................... passim

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ....................................... 23, 24, 25

*Sierra Club, Inc. v. Leavitt*,
  488 F.3d 904 (11th Cir. 2007) ........................................................................... 11

*Standard Oil Co. v. Am. Cyanamid Co.*,
  774 F.2d 448  (Fed. Cir. 1985) ........................................................................... 24

*United Carbon Co. v. Binney & Smith Co.*,
  317 U.S. 228 (1942) ........................................................................................... 11

## **Statutes**

35 U.S.C. § 112 ................................................................................................... passim

## **Rules**

Fed. R. Civ. P. 56(c) ............................................................................................... 11

L.R. 3.01(h) .............................................................................................................. 3

L.R. 3.01(j) ............................................................................................................... 3

## NOTICE OF MOTION AND MOTION

Defendant General Electric Company ("General Electric") moves for summary judgment declaring that claims 1 and 12 of U.S. Patent No. 5,283,726 ("the '726 patent")—the only claims asserted in this action—are invalid as a matter of law for failing to meet the statutory claiming requirements of 35 U.S.C. § 112(2).  The courts have repeatedly held that a patent specification's failure to provide structure, clearly associated and necessary to perform the function claimed and recited for an element in means-plus-function format under 35 U.S.C. § 112(6), renders the claim containing that means-plus-function element invalid under Section 112(2).  *See, e.g., Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007); *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1292-93 (Fed. Cir. 2005).  Where a patent claim recites a "means" for carrying out a specified function, the applicant has availed itself of the claiming flexibility afforded under Section 112(6), and must bear the accompanying statutory disclosure burdens.  *See Default Proof*, 412 F.3d at 1298.  Holding otherwise would ignore the statute and deprive the public of proper notice as to what the patent claims purport to cover.  *Biomedino*, 490 F.3d at 953.

Although the asserted claims require a "signal providing means," namely, "means for providing a signal corresponding to the current desired in said AC conductors and for which the properties of current magnitude, current flow direction, and changes in the foregoing with respect to time can be arbitrarily selected," the '726 patent specification fails to disclose, or clearly associate, any structure that provides the claimed functionality.  As a purely legal issue, that defective disclosure violates the Section 112(2) requirement to "particularly point[ ] out and distinctly claim[ ]" the invention, rendering claims 1 and 12 invalid.

First, the "means for providing a signal corresponding to the current desired . . . for which the properties . . . can be arbitrarily selected" requires a structure for *arbitrarily selecting* the specified signal properties.  In particular, "current magnitude . . . and changes in the foregoing with respect to time" requires specifying a signal for a desired current

*waveform*.  But the '726 patent specification provides <u>no disclosure</u>, or even discussion, of any structure for "arbitrarily selecting" any signal (or current) waveform.  Aside from the claims the words "arbitrary" or "arbitrarily selecting" do not appear in the patent.  This failure alone renders the asserted claims invalid.

Second, the "means for providing a signal corresponding to the current desired . . . for which the properties of current magnitude . . . and changes in the foregoing with respect to time can be arbitrarily selected" further requires a structure that provides a signal for any "desired" and "arbitrarily selected" current waveform (changes in current magnitude with respect to time).  The structures described in the '726 patent specification, however, are incapable of providing this functionality.  By their express terms the disclosed embodiments concerning a fixed, DC reference source, a fixed sinusoidal reference source, or "sine wave generator 184" providing a signal matching the AC line voltage waveform, only provide a <u>single</u> waveform.  These embodiments do not, and cannot, provide a plurality of waveforms, let alone a signal for any "arbitrarily selected" waveform.  According to the applicant's prosecution arguments, moreover, the sinusoidal reference signal embodiments were plainly distinguished, disclaimed, and otherwise *disassociated* from the "signal providing means," and thus cannot be corresponding structure.

The '726 patent specification at most seems to suggest that someone of ordinary skill in power electronics would "know" to substitute different, discrete circuit elements as a reference signal source, to provide different signal waveforms in these single-waveform embodiments.  The law, however, requires that all structure that actually performs the claimed means-function <u>must be disclosed</u>; it specifically provides that the "structure" cannot be left to the background knowledge of the artisan; and the structure cannot be a person, such as a user or circuit designer.  This additional defective disclosure also violates Section 112(2), rendering the asserted claims invalid.

* * *

This motion is based on General Electric's third defense of patent invalidity (Dkt. 36 at 6) and second counterclaim for a declaratory judgment of invalidity (Dkt. 32-2 ¶¶ 11-13), 35 U.S.C. § 112, the Scheduling Order, L.R. 3.01(h), the accompanying memorandum of points and authorities, the Declaration of Einar V. Larsen, the record Appendix submitted herewith,[1] the papers and pleadings on file in this matter, and such other matters as may properly come before the Court.[2]  Pursuant to L.R. 3.01(j), General Electric requests thirty minutes of oral argument, and one hour total.

## STATEMENT OF UNDISPUTED FACTS

A patent claim's compliance with 35 U.S.C. § 112(2), as well as construing the function and identifying corresponding structure for a means-term claimed under 35 U.S.C. § 112(6), are purely questions of law based on the specification of the patent in suit and its prosecution file history in the U.S. Patent Office.  The '726 patent (A1-42) and its file history (A43-242) are public records whose contents are not reasonably disputed.  The following numbered facts ("SUF") are material and without genuine dispute.

## I.   ASSERTED CLAIMS

1.   U.S. Patent No. 5,283,726, entitled "AC Line Current Controller Utilizing Line Connected Inductance and DC Voltage Component," issued on February 1, 1994.  (A1.) Only claims 1 and 12 are asserted in this action.  (A245-46; A248 &  A248-50; A253-56.)

2.   Claim 1 provides, in relevant part (with emphases added):

An electrical controller in which *a current having desired, arbitrarily selected properties of magnitude, flow direction, and changes of the foregoing with respect to time can be established*, said controller

---

[1] General Electric submits herewith an Appendix, which will be cited hereinafter as "A____."  Patents are further cited by column:line.

[2] General Electric included a Table of Contents and Table of Authorities for the Court's convenience.  Local Rule 3.01(a) does not specifically address whether the tables are counted against the page limit, and General Electric has not.  If the Court counts the tables, then General Electric is prepared to re-file the brief without them.

being connectable to **AC means** providing an AC voltage and comprising:

at least a pair of AC conductors in which *the current having the desired, arbitrarily selected properties can be established*, said AC conductors being connectable to the **AC means** for being subjected to the AC voltage;

\* \* \*

***means*** *for providing a signal corresponding to the current desired in said AC conductors and for which the properties of current magnitude, current flow direction, and changes in the foregoing with respect to time can be arbitrarily selected*; and

**control means** coupled to *said **signal providing means*** and controlling the controllable current conduction means responsive to said signal for forming current paths in said controller . . . *so that the current in said AC conductors has the desired, arbitrarily selected properties.*

(A35-36, 30:60-31:49, as amended at A42.)

3.      Claim 12 depends from claim 1 and incorporates each element in claim 1.

(A36, 32:33-41; *see also* 35 U.S.C. §§ 112(4) & (5).)

4.      ENPAT admits that the "signal providing means" ("means for providing a signal . . .") is a means-plus-function element under 35 U.S.C. § 112(6).  (A255.)

## II.      THE '961 APPLICATION

5.      The '726 patent issued from U.S. Application Ser. No. 07/810,961 ('961 application), which Alan W. Wilkerson ("the applicant") filed on December 20, 1991.  (A43, A47.)

### A.      The Original Claims As Filed

6.      The '961 application, on December 20, 1991, originally contained application (as opposed to issued) claim 1, which provided in relevant part:

An electrical converter in which *a current having a desired magnitude and flow direction* can be established . . . comprising: \* \* \*

**control means** for controlling the **controllable current conduction means** . . . thereby to control *the magnitude and flow direction of the current* through the **inductive means** and hence the AC conductors.

(A108, line 1, to A109, line 2 (emphases added).)

B.    **Claim Rejections**

7.    On October 23, 1992, the examiner rejected application claim 1 (and others) as anticipated by several prior art references, including U.S. Patent No. 5,045,991 to Dhyanchand et al. ("Dhyanchand"), (A331-37), and U.S. Patent No. 4,625,272 to Okuyama et al. ("Okuyama") (A338-48). (*See* A150, A154 ¶¶ 8-11.)

C.    **Claim Amendment**

8.    On March 23, 1993, the applicant responded to the claim rejections by canceling claim 1.  (A159, A172.)  The applicant further amended to add application claim 49.  (A172, line 1, to A173, line 44.)

9.    Application claim 49, which later issued as '726 patent claim 1, refined the current properties addressed by the controller and added the "signal providing means" element now at issue:

> An electrical controller in which a current having desired, arbitrarily selected properties of magnitude, flow direction, and changes of the foregoing with respect to time can be established . . . comprising:* * *
>
> **means** for providing a signal corresponding to the current desired in said AC conductors and for which the properties of current magnitude, current flow direction, and changes in the foregoing with respect to time can be arbitrarily selected[.]

(A172, line 1, to A173, line 32 (emphasis added).)

10.   Whereas application claim 1 addressed current having "desired magnitude and flow direction," application claim 49 specifically addressed currents (and signals corresponding to such currents) having "desired, *arbitrarily selected* properties of magnitude, flow direction, *and changes of the foregoing with respect to time*."  (A172, lines 2-3; A173, lines 29-32 (emphases added).)  *Compare* A108-09 (application claim 1) *with* A172-73 (application claim 49).

11.     In other words, by comparison to cancelled claim 1, the new application claim 49:

- added the requirement that the controller provide a current with "arbitrarily selected" properties;

- changed *the singular* "a current having a desired magnitude and flow direction" *to the plural* "a current having desired, arbitrarily selected properties…";

- added "changes of the foregoing [e.g., magnitude and flow direction] with respect to time" to the controlled current properties provided by the controller; and

- added the "signal providing means" element, as distinct from the previously claimed "control means."

**D.      Prosecution Argument**

12.     Referring to this new language, this new signal providing means element, and this new application claim 49, the applicant specifically argued:

> [C]laim 49 now calls for **a signal providing means** that provides an AC current controller signal for which the properties of current magnitude, current flow direction, *and changes of the foregoing with respect to time can be arbitrarily selected* and for **a control means** responsive to such **a signal providing means**.

(A193 (emphasis added).)

13.     The applicant argued that the "signal providing means" element in application claim 49 was different from the cited art because:

> [T]he circuitry of the Dhyanchand reference employs the AC line voltage wave form as the reference signal that becomes the "command" for the AC line current.  The resulting AC line current cannot be construed arbitrary [sic] since the current can only be sinusoidal.
>
> The circuitry of the present invention, on the other hand, is capable of providing a current having a desired, arbitrarily selected wave form. For example, as shown in Figs. 3 and 4 of the application, the circuitry of the present invention can provide a DC current, if desired.

(A193.)

14.     The applicant likewise argued that Okuyama provided a "phase shifted sinusoidal current" and that "the current wave form is clearly non arbitrary." (A194.)

15.     Application claim 49 was subsequently allowed, renumbered, and issued without material change as the '726 patent claim 1. (A202; *cf.* A35-36.)

## III.   THE '726 PATENT SPECIFICATION

16.     The '726 patent specification contains no discussion of "arbitrarily selecting" a signal or generated current waveform, and aside from the claims the specification does not use the words "arbitrary," "arbitrarily," or "arbitrarily selected."

17.     The '726 patent specification does not disclose any structure, circuit, or embodiment with which a user (or anyone else) could "arbitrarily select" a reference signal or "desired" current waveform: no figure shows an apparatus that allows one to arbitrarily select between a direct current, square wave, sinusoidal, sawtooth, or other waveform; no figure shows an apparatus that allows one to arbitrarily select any arbitrary current waveform; and nothing in the '726 patent specification discusses or explains how a user (or anyone else) would select a signal (current) waveform.

### A.   The Controller (Inverter)

18.     The '726 patent states that it was "*the* object of the present invention" to provide a "controller[ ] having an AC portion connected to AC power *which* [sic] *the current can be controlled with respect to magnitude, waveshape, and flow direction*." (A22, 4:10-13 (emphasis added).)

19.     The '726 patent further states with reference, e.g., to the controller shown in Fig. 1, 3A, and 4A:

The operation of the switches 21 through 24 in configuration 20 is such as to cause one or both of the voltage sources, i.e. AC power mains 9, 10 or capacitor 36, to establish the voltage across inductor 14 or to allow the energy stored in inductor 14 to establish this voltage.  By operation of the switches in controller 1 *in a desired manner*, it is possible *to establish an AC current in the AC portion of the controller having any desired direction of flow, wave shape, and magnitude*, thereby to carry out the objects of the invention noted above.

(A24, 8:10-19 (emphasis added); *see also* A23, 6:45-54.)



FIG. I

### B.    DC Reference Source 40

20.    As shown in Fig. 3A, and again in Fig. 1, 4A, 7A, and 7C, the '726 patent specification discloses providing the comparison of a direct current signal (from a potentiometer or fixed reference 40) against the controller's generated current, sensed and appearing on line 42, to pulse width modulator 38, which switches the transistors in the inverter to generate the "AC current" with the "desired" properties.



(A4, '726 patent Fig. 3A.)

21.    Fig. 6A discloses a variation on Fig. 3A that compares the sum of a fixed reference 40 and the generated current (at sensor 100), providing the result (via regulating amplifier 102) to compare against a triangular waveform in order to provide the pulse width modulated control signals.



(A8, '726 patent Fig. 6A.)

22.    The specification describes replacing the fixed reference 40 in shown Fig. 3A with a sine wave generator to generate a current with a sinusoidal waveform:

While current 50 is shown in FIGS. 3 and 4 as having a constant value for exemplary purposes, *it will be appreciated that the current may be made to have varying level to create any magnitude or wave shape profile desired. For example, if it is desired to provide a sinusoidal wave form to current 50, reference source 40 for pulse width modulator 38 would comprise a sine wave generator* so that the regulating action of reference source 40, feed back means 42 and pulse width modulator 38 operate controller 1 to cause current 50 to have a sinusoidal wave form.

(A27-A28, 14:62-15:4 (emphasis added).)

### C.   <u>Sinusoidal Reference (Sine Wave Generator 184)</u>

23.     Figs. 12-14 and 16 disclose using a sine wave generator 184 to provide a reference signal, against which a sensed current is compared, with the result (again) being provided to pulse width modulator 38.



(A15, Fig. 12.)

24.     As in Fig. 3A, in Figs. 12, 13, and 16, the current (ultimately compared to the sinusoidal reference) is sensed on the AC line conductors (sensor 100), (A15-16, A19), whereas in Fig. 14 the current is sensed in the AC mains (sensor 242).  (A17.)

25.     Describing the embodiment in Fig. 12, the '726 patent specification provides:

Controller 170 shown in FIG. 12 establishes *a current in AC conductors 11 and 12 that is sinusoidal in wave shape*[.] * * *

*In order for the controller 170 to establish a sinusoidal AC line current, a sinusoidal reference signal must be provided for the operation of regulating amplifier 102* and pulse width modulator 38. * * *

To the foregoing ends, *sine wave generator 184 generates a sine wave that is synchronized to the sinusoidal AC line voltage in AC mains 9 and 10 and has the same period and phase as the AC line voltage. Sine wave generator 184 may comprise a simple line voltage attenuator.* However, harmonic or other deviations in the AC voltage in AC power mains 9 and 10 will be reflected in the sine wave signal provided by a line voltage attenuator. *To avoid this problem, it is preferred that the sine wave be generated independently of the line voltage, yet still be synchronized with line voltage, as for example by use of a phase-locked loop oscillator. A phase locked loop oscillator can produce any desired wave form, including sinusoidal.*

(A31, 21:20-49 (emphases added).)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     <u>INTRODUCTION</u>

The applicant chose to amend his application on March 23, 1993, and claim his "signal providing means," in generic and purely functional language as provided by the means-plus-function format under Section 112(6).  He added this element, moreover, specifically to overcome claim rejections in view of close prior art.  But in setting out purely functional requirements for the "signal providing means," the applicant apparently never checked to make sure that the specification described a structure even capable of providing the claimed functionality.  Rather than disclose and clearly associate structure as the "price" for the functional claiming convenience under Section 112(6), this applicant is "attempting to claim in functional terms unbounded by any reference to structure in the specification."  *Med. Instr. & Diag. Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003).

The '726 patent specification does not disclose a structure that provides the claimed "signal providing means" functions: there is no structure for arbitrarily selecting signal waveforms; there is no structure for providing any arbitrarily selected signal waveform.  The structure cannot be incorporated by reference; it cannot be a person; and it cannot be left generally to the knowledge of a person of skill in the art.  The structure must be <u>disclosed</u>. Without that structural disclosure, the public does not know what the patent claim covers. The '726 patent specification's defective and insufficient disclosure renders the "signal providing means" unbounded, and the asserted claims invalid under Section 112(2).

## II.     <u>APPLICABLE LAW</u>

A patent claim's compliance with Section 112(2) is "a legal conclusion that is drawn from the court's performance of its duties as the construer of patent claims." *Default Proof*, 412 F.3d at 1298.  The determination does not depend on any factual finding, and inventor testimony or intent is irrelevant.  Accordingly, there are no genuine issues as to any material

fact.  The issue is therefore ripe for determination on summary judgment.  *See, e.g., Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1367-68 (Fed. Cir. 2008) (affirming summary judgment of invalidity under Section 112(2)); *Default Proof*, 412 F.3d at 1292-93 (same); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002) (affirming stipulated judgment of invalidity under Section 112(2) following claim construction that corresponding structure was not disclosed for disputed means-clause).  As shown below, pursuant to Fed. R. Civ. P. 56(c), and as a matter of law, General Electric is entitled to summary judgment declaring that claims 1 and 12 are invalid under Section 112(2).  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007); Fed. R. Civ. P. 56(c).

A.     **Section 112(2) Claiming Requirements**

Section 112(2) provides in relevant part that the inventor must "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112(2).  The claiming requirement at Section 112(2) "seeks to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their rights."  *General Electric Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938); *accord United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 232 (1942) ("The courts . . . need and may insist upon the precision enjoined by the statute.").  As the Supreme Court explains, "[t]he limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others, and the assurance that the subject of the patent will be dedicated ultimately to the public."  *General Electric*, 304 U.S. at 369.  Thus, "claimed inventions . . . require *precise descriptions* of the *new characteristic for which protection is sought*."  *General Electric*, 304 U.S. at 369 (emphases added).  Section 112(2), in short, enforces the public notice function of the patent claim which lies at the core of the

bargain under which Congress grants limited exclusionary patent rights in exchange for full disclosure of alleged inventions.

### B.      Section 112(2) Applies To Means-Claiming Under Section 112(6)

Section 112(2) applies with particular force where a patent applicant fails to disclose corresponding structure for a claim limitation recited in "means plus function" form under 35 U.S.C. § 112(6).  That section provides that "[a]n element in a claim for a combination may be expressed as a means . . . for performing a specified function without the recital of structure" and that "such claim *shall be construed to cover the corresponding structure . . . described in the specification* and equivalents thereof."  35 U.S.C. § 112(6) (emphasis added).

"[T]he requirement of looking to the disclosure to find the corresponding structure comes from section 112, paragraph 6 itself."  *Medical Instrumentation*, 344 F.3d at 1212.  The applicant's duty to clearly link or associate structure with claimed function "is the *quid pro quo* for allowing the patentee to express the claim in terms of function" under Section 112(6).  *Id.*, 344 F.3d at 1211.  That convenience is significant, as it allows the patent applicant to claim his invention in purely functional terms without "recit[ing] in the claims all possible structures that could be used as means in the claimed apparatus."  *Id.*

Section 112(2) confirms and enforces the disclosure and linking obligation imposed by functional means-claiming.  *Id.*  "If the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee has not paid that price but is rather attempting to claim in functional terms unbounded by any reference to structure in the specification."  *Id.*  As a consequence, "[i]f an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of Section 112."  *In re Donaldson Co., Inc.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (*en banc*).  The cases provide that the patent

specification must disclose "all structure that actually performs the recited function." *Default Proof*, 412 F.3d at 1298, *citing Cardiac Pacemakers*, 296 F.3d at 1119; *see also Biomedino*, 490 F.3d at 948 ("[I]n return for generic claiming ability, the applicant must indicate in the specification what structure constitutes the means.").

        **C.**      **Test For Corresponding Structure**

A structural disclosure qualifies as corresponding structure "*only if* the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Default Proof*, 412 F.3d at 1298 (emphasis added). A corresponding structure "must be necessary to perform the claimed function." *Omega Eng'g, Inc. v. Raytek Corp*, 334 F.3d 1314, 1321 (Fed. Cir. 2003). If a disclosed structure is clearly associated with the means, then the courts test the sufficiency of the disclosure by whether it is "disclosed in the written description in such a manner that one skilled in the art will know and understand what structure corresponds to the means limitation." *Biomedino*, 490 F.3d at 950. First, however, there must be <u>disclosure</u>: "[A] bare statement that known techniques or methods can be used does not disclose structure." *Id.*, 490 F.3d at 953. "It is not proper to look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent." *Medical Instrumentation*, 344 F.3d at 1212.

**III.**     **CLAIMS 1 AND 12 FAIL THE SECTION 112(2)**
             **CLAIMING REQUIREMENTS AND ARE INVALID**

Asserted claims 1 and 12 both contain the "signal providing means." (SUF 2-3) Both claims are thus invalid under Section 112(2) if the '726 patent specification fails to provide and clearly associate a structure providing the claimed functionality. That determination follows from the claim construction.

The courts construe "an element" (a means-plus-function term or "means-clause") under Section 112(6) in a two-step process. First, court identifies and construes the

"specified function" set forth in the claim for the "means." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321 (Fed. Cir. 2003). Second, the court identifies the "corresponding structure . . . described in the specification" that is both 1) clearly linked or associated with the "specified function," and 2) necessary to perform it. *Id.* Because the "means" is claimed "without the recital of structure," 35 U.S.C § 112(6), the limits of this term, and the corresponding structure, must be found in the patent specification. *See, e.g., Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998) ("[T]he means term in a means-plus-function limitation is essentially a generic reference for the corresponding structure disclosed in the specification.").

### A.      Construing The "Signal Providing Means" Function

ENPAT agrees that the "signal providing means" is a means-clause under Section 112(6). (SUF 4.) The means-claiming presumption raised by the phrase "means for," in any event, is unrebutted by any structural recital in the claims. *See, e.g., Biomedino*, 490 F.3d at 949-50.

Claim construction as to the <u>function</u> of the "signal providing means" uses the normal claim analysis. *See Cardiac Pacemakers*, 296 F.3d at 1113. Moreover, "[w]hen construing the functional statement in a means-plus-function limitation, we must take great care not to impermissibly limit the function by adopting a function different from that *explicitly recited in the claim*." *Omega Eng'g*, 334 F.3d at 1322 (emphasis added).

Here, there should be no dispute that the "signal providing means," e.g., "means for providing a signal corresponding to the current desired in said AC conductors and for which the properties of current magnitude, current flow direction, and changes of the foregoing with respect to time can be arbitrarily selected," (SUF 2; A36, 31:26-30), requires (in material part) a structure that: 1) provides some mechanism for a user to arbitrarily select a signal

(current) waveform; and 2) provides a signal corresponding to any arbitrarily selected signal (current) waveform.

In the event that ENPAT disputes this claim construction, a more fulsome analysis is provided at Section IV.

**B.     The '726 Patent Fails To Disclose And Clearly Associate
         Corresponding Structure For The Signal Providing Means**

The '726 patent specification provides no corresponding structure for the "signal providing means" on at least two grounds, each of which independently renders the claims invalid under Section 112(2).

**1.     No Structure To "Arbitrarily
         Select" A Signal Or Current Waveform**

The "signal providing means" element unambiguously requires providing "a signal corresponding to the current desired in said AC conductors and *for which the properties* of current magnitude . . . and changes in the foregoing with respect to time [e.g., current waveform] *can be arbitrarily selected*." (SUF 2; A36, 31:26-30 (emphases added).)  This claim language requires a mechanism for a user to "arbitrarily select" the "desired current" waveform, changes in the current waveform, and the reference signal corresponding to the same.

Because the applicant added this claim language to distinguish application claim 49 (issued claim 1) from the rejected, and canceled, application claim 1, as well as the prior art, this claim language was *central* to gaining claim allowance.  (SUF 6-11.)  The new claim language therefore represents the claimed novelty over the prior art.  (*Id.*; *see also* SUF 12-15.)  As the Supreme Court observed in 1938, applying the statutory language now codified at Section 112(2), "claimed inventions . . . require *precise descriptions* of the *new*

*characteristic for which protection is sought*." *General Electric*, 304 U.S. at 369 (emphasis added).

The '726 patent specification, however, has no "precise description" of any structure for "arbitrarily selecting" a reference signal or current waveform: there is no discussion, no disclosure, and no explanation of any structure providing a mechanism for a user—or anyone else—to "arbitrarily select" a signal or current waveform. (SUF 16-17.) The '726 patent specification never discloses circuitry or structures, like an arbitrary waveform generator, that might "actually perform[ ] the recited function." *Default Proof*, 412 F.3d at 1298.

Thus, while there are circuits and devices—arbitrary waveform generators, function generators, signal generators, or analog circuits—that might provide a mechanism to select among different waveforms, by not identifying any structure for selecting signal waveforms the applicant left the signal providing means, and claims incorporating it, unbounded. *See, e.g.*, *Aristocrat Techs. Aus. Pty Ltd. v. Intern. Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) ("The point of the requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming."); *Biomedino*, 490 F.3d at 948 ("[I]n return for generic claiming ability, the applicant must indicate in the specification what structure constitutes the means."). The public has no notice of the claim boundaries or scope, and thus no notice as to what conduct, or devices, would (and would not) infringe the claims. In effect, the applicant purports to claim rights in whatever a user might 'think up' as a signal source or signal selection device. The law, however, does not permit such unbounded claim scope. *See General Electric*, 304 U.S. at 369 ("The limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others, and the assurance that the subject of the patent will be dedicated ultimately to the public.").

The only discussion that describes how a user might obtain a particular reference signal waveform for a particular application provides for <u>substituting</u> discrete circuit elements for reference source 40 according to a "desired" waveform:

> [I]t will be appreciated that the current may be made to have varying level to create any magnitude or wave shape profile desired.  For example, *if it is desired to provide a sinusoidal wave form* to current 50, reference source 40 for pulse width modulator 38 *would comprise a sine wave generator*[.]

(SUF 22; A27-28, 14:63-15:1 (emphasis added).)  But using a different discrete circuit element ("would comprise a sine wave generator) for a particular "selected" waveform ("if it is desired to provide a sinusoidal wave form") excludes the idea of using a single device (arbitrary wave generator), with functionality by which a user can select a desired waveform, as a reference source.

The description further demonstrates that the '726 patent specification does not provide any structure for "arbitrarily selecting" a signal or current waveform.  The patent specification must disclose "all structure that actually performs the recited function."  *Default Proof*, 412 F.3d at 1298, *citing Cardiac Pacemakers*, 296 F.3d at 1119; *see also Biomedino*, 490 F.3d at 948 ("[I]n return for generic claiming ability, the applicant must indicate in the specification what structure constitutes the means.").  The passive voice description ("if it is desired," "would comprise") obscures the identity of any person, or thing, that does the "selecting" required by the claim.  The description plainly does not disclose any circuit, or structure, that would provide the "sine wave generator" as "reference source 40," nor any circuit or structure by which a user could make his "desire[ ]" to "provide a sinusoidal wave form" known and operational.

At most, this description provides that: 1) a user, or circuit designer, must both select the discrete circuit element ("would comprise a sine wave generator") to be used as reference source 40; and 2) the person must replace circuit elements in the claimed "controller" as the

"desired" waveforms change.  The disclosure and linkage requirement imposed in exchange for claiming under Section 112(6), however, fundamentally demands that corresponding structure cannot simply be left to the knowledge of a person having ordinary skill in the art.  To the contrary, the structure must be specifically and explicitly disclosed.  "It is not proper to look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent."  *Medical Instrumentation*, 344 F.3d at 1212, and "a bare statement that known techniques or methods can be used does not disclose structure." *Biomedino*, 490 F.3d at 953.  As noted above, the '726 patent specification cannot meet the structural disclosure obligation for the "signal providing means" by calling for a circuit designer to improvise, borrow, or create some unspecified circuit to meet a functional requirement.

Nor can a person, such as the user or a circuit designer in this instance, provide "corresponding structure."  *See Default Proof*, 412 F.3d at 1300 ("a human being cannot constitute a means"), *citing In re Prater*, 415 F.2d 1393, 1398 (C.C.P.A. 1969).  In *Default Proof*, the Federal Circuit affirmed claim invalidity where the patent provided no structure for a "means for dispensing at least one debit card for each transaction." 412 F.3d at 1293.  The court specifically rejected the argument that "human participation" or "manual operation" could provide corresponding structure for the subject "means for dispensing." *Id.*, 412 F.3d at 1300.  As in *Default Proof*, the discussion of reference source 40 in the '726 patent specification "merely beg[s] the question of what structure the human being operates to perform the [claimed] function" of the disputed means term.  *Id.*; *see also Cardiac Pacemakers*, 296 F.3d at 1114 (physician cannot be structure for "third monitoring means for monitoring the ECG signal produced by said detecting means for activating said charging means in the presence of abnormal cardiac rhythm in need of correction").

In short, the '726 patent specification does not disclose any structure for arbitrarily selecting a signal (current) waveform.  The only discussion even contemplating the selection

of different waveforms expressly leaves the selection, and implementation, to the user or circuit designer. The specification ignores the disclosure requirements under the case law, and the defective and insufficient disclosure renders the asserted claims invalid under Section 112(2).

### 2.    Disclosed Structure Is Incapable Of Providing Any "Arbitrarily Selected" Waveform

The '726 patent also fails to disclose and clearly associate structure providing the signal for any "arbitrarily selected" current waveform. At most, the '726 patent discloses structures that only partially meet the signal providing means functionality, by providing, for example, specified waveforms rather than a full plurality of any "arbitrarily selected" current waveform. Beyond that, the specification again impermissibly leaves any corresponding structure to the knowledge of a person having ordinary skill in the art.

### a)    Fixed Signal Sources Cannot Be Corresponding Structure

The '726 patent describes three different fixed-signal structures that are themselves incapable of providing an "arbitrarily selected" signal or current waveform, or even a plurality of waveforms, and thus fail as corresponding structure. *Omega Engineering*, 334 F.3d at 1321. By their own terms the fixed reference sources in Figs. 1, 3A, 4A, 6A, 7A and 7C cannot be corresponding structure. (SUF 20-21.) These reference sources can *only* provide DC current. Similarly, the suggestion that a "sine wave generator" be used for "reference source 40" if "it is desired to provide a sinusoidal wave form to current 50," (SUF 22), likewise can *only* provide sinusoidal current.

Finally, the sinusoidal signal embodiments at Figs. 12-14 and 16 are plainly not corresponding structure for the signal providing means. (SUF 23-24.) Far from providing an "arbitrarily selected" signal waveform, the '726 patent describes the embodiments at Figs. 12, 13, 14, and 16 as providing <u>sinusoidal signals</u> developed from the <u>AC line voltage</u>. The

'726 patent plainly specifies that these embodiments establish a "current . . . that is sinusoidal in wave shape," and that "a sinusoidal reference signal *must be provided*." (SUF 25 (emphasis added).)  The reference source itself is named "Generator For Sine Wave Synchronized To Line Voltage," (SUF 23; *see also, e.g.,* A15, Fig. 12) and "sine wave generator 184." (SUF 25; A31, 21:36.)  These embodiments, in short, do not (and cannot) provide a signal for any "arbitrarily selected" current waveform, nor even a plurality of waveforms, and cannot be corresponding structure.

**b)     Disclaimed Embodiments
Cannot Be Corresponding Structure**

The sinusoidal embodiments, and "sine wave generator 184," in Figs. 12-14 and 16 (SUF 23-25), moreover, are not "clearly associated" with the signal providing means.  That further disqualifies these structures as corresponding structure.  *See, e.g., Cardiac Pacemakers*, 296 F.3d at 1113 ("[T]he specification must clearly associate the structure with performance of the function.").  The applicant specifically *distinguished* Dhyanchand during prosecution on grounds that it: 1) "employs the AC line voltage waveform as the reference signal that becomes the 'command' for the AC line current"; and 2) that the generated currents "can only be sinusoidal." (SUF 12-13.)  That prosecution argument is a disclaimer that defines the signal providing means to <u>exclude</u> the Dhyanchand embodiment.  *See* Section IV.B, below.  The argument—on *either ground*—simultaneously distinguishes the sinusoidal embodiments in SUF 23-25: like Dhyanchand they employ the AC line voltage to generate a reference signal (SUF 23, 25); and like Dhyanchand they only provide sinusoidal waveforms to generate sinusoidal currents (*Id.*).  The disclaimer, and prosecution argument, disqualify these embodiments as corresponding structure.  *See Default Proof*, 412 F.3d at 1298.

### c)   A Phase Locked Loop Is Not Corresponding Structure

In disclosing a phase locked loop as an alternative embodiment of sine wave generator 84, the '726 patent specification states that "[a] phase locked loop oscillator can produce any desired wave form, including sinusoidal." (SUF 25; A31, 21:48-49.)  This reference to a phase locked loop (PLL), however, also fails to disclose corresponding structure for the claimed signal providing means.  (*See, e.g.*, SUF 16-17; Declaration of Einar V. Larsen ("Larsen Decl.") ¶¶ 12-14, 18-22.)  The '726 patent specification does not teach using a PLL to produce a non-sinusoidal waveform.  (SUF 25; Larsen Decl. ¶ 20.)

As previously noted, the '726 patent specification (and the prosecution argument) squarely *disassociates* this sinusoidal embodiment from the signal providing means.  The PLL is described for use as a "sine wave generator" in the disclaimed embodiment.  (SUF 25; *see also* Larsen Decl. ¶ 19.)

Even ignoring the lack of clear linkage, the '726 patent specification still fails to disclose structure, e.g., circuits, providing a mechanism for anyone to "arbitrarily select" among signal waveforms that might be generated using a PLL for a clock signal.  (SUF 25; Larsen Decl. ¶ 21.)  It likewise fails to provide any circuit that can shape and provide any "arbitrarily selected" signal or current waveform using a PLL output.  (SUF 25; Larsen Decl. ¶ 22.)  While various circuits were known, in 1991, that could generate some output waveforms using a PLL clock signal, none of these circuits are disclosed in the '726 patent specification.  (SUF 16-17; *see also* Larsen Decl. ¶¶ 12-14, 18-22.)  Such circuits take a fair amount of engineering, *see, e.g.,* Larsen Decl. ¶ 22, and by not identifying what circuits the applicant had in mind the '726 patent purports to claim a controller, and "signal providing means," that covers *any structure* that *anyone* might develop.

Leaving these circuits to the user's imagination renders the disclosure defective under the case law.  *Default Proof*, 412 F.3d at 1298 (patent specification must disclose "all structure that actually performs the recited function"); *see also Biomedino*, 490 F.3d at 948

("[I]n return for generic claiming ability, the applicant must indicate in the specification what structure constitutes the means."); *id.* 490 F.3d at 953 ("[A] bare statement that known techniques or methods can be used does not disclose structure.").

The '726 patent specification's reference to a phase locked loop thus also fails as corresponding structure for the signal providing means.

> ### C.     The Asserted Claims Are Invalid

Because the '726 patent specification does not disclose, and clearly associate, structure that provides the full claimed signal providing means functionality, claims 1 and 12 fail the claiming requirements at Section 112(2) and are invalid.  *Biomedino*, 490 F.3d at 952-53; *Default Proof*, 412 F.3d at 1298; *Cardiac Pacemakers*, 296 F.3d at 1114; *In re Donaldson*, 16 F.3d at 1195.

## IV.     DETAILED CLAIM CONSTRUCTION FOR THE SIGNAL PROVIDING MEANS FUNCTION

As noted in Section III.A, above, the meaning of the function claimed for the "signal providing means" should not be controversial.  Should ENPAT disagree, General Electric provides the following claim analysis as relevant to the issues in this motion.

The "signal providing means," e.g., "means for providing a signal corresponding to the current desired in said AC conductors and for which the properties of current magnitude, current flow direction, and changes of the foregoing with respect to time can be arbitrarily selected," requires a structure that: 1) provides some mechanism for a user to arbitrarily select a signal (current) waveform; and 2) provides a signal corresponding to any arbitrarily selected signal (current) waveform.

> ### A.     Plain Meaning Confirms The Function

A change in current magnitude with respect to time defines a waveform.  (A354.) The plain language of the "signal providing means" thus calls for providing a signal

corresponding to an "arbitrarily selected" current waveform.[3]  *See, e.g.,  Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*) (claim construction begins with the ordinary meaning of the words of the claim); *id.* at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms").  The sequence of claim amendments from application claim 1 to application claim 49, (SUF 6-11), likewise comports with the Federal Circuit's cautionary language in *Omega Engineering* ("we must take care not to impermissibly limit the function by adopting a function different from that explicitly recited in the claim"), and confirms that the plain meaning of the signal providing means functional language must be given its full scope.  *See, e.g., Omega Eng'g*, 334 F.3d at 1322.

The remainder of claim 1 likewise confirms this "signal providing means" function. *See Phillips*, 415 F.3d at 1314 (looking to context in which terms are used in the asserted claim).  The claim requires "[a]n electrical controller in which a current having desired, arbitrarily selected properties of magnitude, flow direction, and changes of the foregoing with respect to time can be established," (SUF 2; A35, 30:60-63), and operation of the "control means" responsive to the signal from the "signal providing means" "so that the current in said AC conductors has the desired, arbitrarily selected properties." (SUF 2; A36, 31:48-49.)

### B.    **Prosecution Disclaimer Confirms The Function**

As a matter of law, the applicant's March 23, 1993 argument distinguishing Dhyanchand, (SUF 12-13), is a prosecution disclaimer that confirms the "signal providing means" function requires providing a signal corresponding to any arbitrarily selected current waveform.  *See, e.g.*, *Phillips*, 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating . . . whether the inventor limited the

---

[3] While the plain language of the "signal providing means" also sets forth other functional requirements, such as providing a signal corresponding to any "desired and arbitrarily selected" current *magnitude*, these other functions are not addressed here.  General Electric reserves all invalidity and claim construction arguments as to these other functions.

invention in the course of prosecution, making the claim scope narrower than it would otherwise be.") (collecting cases); *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452  (Fed. Cir. 1985) (the file history includes "arguments made to convince the examiner that the claimed invention meets the statutory requirements of novelty, utility, and nonobviousness," and thereby "limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance").[4]  Here, the applicant specifically argued, with respect to the "signal providing means":

> [T]he circuitry of the Dhyanchand reference employs the AC line voltage wave form as the reference signal that becomes the "command" for the AC line current.  The resulting AC line current cannot be construed arbitrary [sic] since the current can only be sinusoidal.
>
> The circuitry of the present invention, on the other hand, is capable of providing a current having a desired, arbitrarily selected wave form. For example, as shown in Figs. 3 and 4 of the application, the circuitry of the present invention can provide a DC current, if desired.

(SUF 13; s*ee also* SUF 14.)  Under *Phillips*, *Standard Oil*, and *Omega Engineering*, this prosecution argument is a disclaimer establishing that claim 1 requires providing "a current having a desired, arbitrarily selected wave form."  It further disclaims any circuit that provides just sinusoidal currents, and any circuit that "employs the AC line voltage as the reference signal that becomes the 'command' for the AC line current."  Because the "signal providing means" requires providing a signal corresponding to the inverted current, this disclaimer confirms that the signal providing means requires providing a signal corresponding to a current with any arbitrarily selected waveform.

---

[4] *See also Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[S]ince[ ] by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection.") (emphasis added); *Omega Eng'g*, 334 F.3d at 1324 ("As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution.").

### C.      The Specification Confirms The Function

Although the '726 patent specification does not use the phrase "arbitrarily selected," (SUF 16), it otherwise confirms that the "signal providing means" requires a structure that provides a signal corresponding to a current waveform. *See, e.g.*, SUF 18; A22, 4:9-13 ("It is therefore the object of the present invention to provide a means, termed herein "a controller," having an AC portion connected to the AC power which [sic] the current can be controlled with respect to magnitude, waveshape, and flow direction."); SUF 19; A24, 8:15-19 ("By operation of the switches in controller 1 in a desired manner, it is possible to establish an AC current in the AC portion of the controller having any desired direction of flow, wave shape, and magnitude, thereby to carry out the objects of the invention noted above."). *See Phillips*, 415 F.3d at 1315-16 (court looks to specification to confirm meaning from contextual usage of claim term).

## V.      CONCLUSION

For the foregoing reasons, claims 1 and 12 fail the requirements of Section 112(2) and are invalid.  Accordingly, the Court should GRANT General Electric's motion and render summary judgment in favor of General Electric declaring that claims 1 and 12 are invalid under Section 112(2).

Respectfully submitted,


Dated this 26th day of May, 2009.    By:____s/  Adam R. Wichman_____

Adam R. Wichman, *Pro Hac Vice*
KLARQUIST SPARKMAN, LLP
600 University Street, Suite 2950
Seattle, WA 98101
Telephone:  206-264-2960
Facsimile:  206-624-2719
adam.wichman@klarquist.com

Jeffrey S. Love, Trial Counsel, *Pro Hac Vice*
KLARQUIST SPARKMAN, LLP
121 SW Salmon Street, Suite 1600
Portland, OR  97204
Telephone:  503-595-5300
Facsimile:  503-595-5301
jeffrey.love@klarquist.com

David A. Jones, Trial Counsel, Fla. Bar No. 500879
Albert F. Tellechea, Fla. Bar No. 323675
HOLLAND & KNIGHT
200 South Orange Avenue, Suite 2600
Orlando, FL 32801
Telephone: 407-425-8500
Facsimile: 407-244-5288
albert.tellechea@hklaw.com
david.jones@hklaw.com

*Attorneys for Defendant*
GENERAL ELECTRIC COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2009, I caused the foregoing document to be electronically filed with the U.S. District Court Clerk, Middle District of Florida, using the CM/ECF system which will automatically send notification of this filing to the following counsel of record:

> Robert A Lynch
> rlynch@hctlaw.com
> Stephen C. Thomas
> sthomas@hctlaw.com
> Kelly Swartz
> kswartz@hctlaw.com
> Hayworth, Cheney & Thomas
> 202 N Harbor City Blvd., Suite 300
> Melbourne, FL  32935

___ /s/ Adam R. Wichman _____